**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| RICHARH TYSON, on his own<br>behalf and on behalf of a<br>class of those similarly<br>situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GRANT COUNTY SHERIFF, in<br>his official capacity;<br>GRANT COUNTY COMMISSIONERS,<br>in their official capacities;<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | NO. 1:07-CV-0010 |

**<u>ORDER AND OPINION</u>**

This matter is before the Court on the: (1) Plaintiff's Motion for Class Certification, filed by Plaintiff, Richarh Tyson, on his own behalf, and on behalf of a class of those similarly situated, on January 22, 2007; and (2) Motion to Dismiss Supplemental State Law Claims, filed by Defendants, Grant County Sheriff, in his official capacity, and Grant County Commissioners, in their official capacities, on March 14, 2007.  For the reasons set forth below, the Motion for Class Certification is **GRANTED**.  Accordingly, a class consisting of "any and all persons currently confined, or who will in the future be confined, in the Grant County Jail," is **CERTIFIED**.  The Motion to Dismiss is **GRANTED**.  The Clerk is **ORDERED**

to **DISMISS** Plaintiff's state law claims **WITH PREJUDICE**. Plaintiff's Constitutional claims **REMAIN PENDING**.

BACKGROUND

On January 19, 2007, Plaintiff, Richarh Tyson, filed a class action complaint for declaratory and injunctive relief against Defendants, Grant County Sheriff, in his official capacity, and Grant County Commissioners, in their official capacities. Plaintiff alleges that the Grant County Jail, in which he is currently incarcerated, is overcrowded, three prisoners are forced to sleep in two-prisoner cells, recreation is limited, the overcrowding has increased tension and violent fights between the prisoners, and staffing is insufficient. (Compl. ¶¶ 16-24, 30, 32.) Plaintiff alleges that the conditions at the Grant County Jail violate the 14th Amendment as applied to pre-trial detainees and the 8th Amendment as applied to convicted prisoners. (*Id.* ¶ 45.) Plaintiff sets forth a number of state law violations as well, including alleged violations of Indiana Code sections 36-2-2-24, 36-2-13-5, and 210 Indiana Administrative Code 3-1-7(g), 3-1-9, and 3-1-15(e). (*Id.* ¶¶ 46-48.)

In the instant motion to certify, Plaintiff seeks to certify a class consisting of "any and all persons currently confined, or who will in the future be confined, in the Grant County Jail." Defendants object to the motion for class certification, arguing

Plaintiff failed to exhaust the requisite administrative remedies under the Prison Litigation Reform Act, because Plaintiff's grievances lacked the requisite specificity.

Additionally, Defendants have filed a motion to dismiss Plaintiff's state law claims.  Defendants argue that there is no private right of action for alleged violations of the Indiana Jail Standards, thus, Plaintiff is foreclosed from seeking an injunction and declaratory relief.  Having been fully briefed, both motions are ripe for adjudication.

<u>DISCUSSION</u>

<u>Motion to Certify Class</u>

The standards for class certification are well grounded and set forth in Rule 23 of the Federal Rules of Civil Procedure.  The plaintiff must establish that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition, the plaintiff must establish at least one prong of Rule 23(b).  In this case, the second prong is relevant, which provides that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also* Compl. ¶ 13. With these principles in mind, the Court can address the appropriateness of a class action in this case.

Numerosity

As set forth above, Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Where the membership of a proposed class is at least forty, this Circuit has found joinder to be impracticable and the numerosity requirement to be met. *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *Matz v. Household Int'l Tax Reduction Inv. Plan*, 232 F.R.D. 593, 600 (N.D. Ill. 2005). Here, Plaintiff represents that the Grant County Jail has a rated capacity of 274 prisoners, but operates over that capacity virtually 100% of the time. (Compl. ¶¶ 16, 17.) Defendants do not dispute that numerosity exists. Therefore, Plaintiff has satisfied the numerosity requirement.

Commonality

Rule 23(a)(2) requires Plaintiff to show that there are common questions of law or fact among the proposed class members. "Commonality generally exists when the defendant has engaged in 'standardized conduct' towards members of the proposed class."

4

*Murray v. Sunrise Chevrolet, Inc*., No. 04 C 7668, 2006 WL 862886, at *2 (N.D. Ill. Mar. 30, 2006) (quotation omitted).   Commonality in questions of law or fact is the only prong of the class certification test that Defendants dispute.   Defendants argue that Plaintiff "only has a de minimus claim short of constitutional dimension" (Defs.' Mem. In Opp. To Pl.'s Mot. To Certify Class, p. 5), and that the claim was not properly exhausted in accordance with the Prison Litigation Reform Act.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail . . . until such administrative remedies as are available are exhausted." Exhaustion of administrative remedies is a condition precedent to suit.   *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002).   The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines.   *Woodford v. Ngo*, 126 S. Ct. 2378, 2384 (2006). Exhaustion is an affirmative defense, and the burden of proof is on Defendants.   *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

Defendants do not contest that Plaintiff Tyson filed, and exhausted grievances claiming that the jail was overcrowded.

5

However, they argue that Tyson was not specific enough, and did not complain that the overcrowding "resulted in any unconstitutional deprivation." (Defs.' Mem. In Opp. To Pl.'s Mot. To Certify Class, p. 2.)  The first grievance submitted by Plaintiff on February 2, 2006, reads as follows:

> We are overcrowded and have been since my arrival at this facility.  I've had someone on my floor for over 2 months up until Feb 2nd.  There are too many people in this block and the overcrowding is causing tension between the inmates.  Also the lockdown from 12-3:30 is causing tension in the block.  3 people locked in a cell during the middle of the day practically on top of one another.

(Compl., p. 9.)  The second grievance dated February 16, 2006, states:

> Would you please do something about the overcrowding in the jail.  There's too many people in these cell blocks.  It's causing too much stress and tension between inmates.  The lockdown causes more stress, especially when there's 3 to a cell.  It's affecting our food rations also.  It seems like there's not enough money in the county to properly house all these inmates.  Sometimes there's not even enough room for everyone to sit down and eat.

(Compl., p. 8.)

It is true, as Defendants stress, that overcrowding by itself is not a violation of the Eight Amendment.  *See Rhodes v. Chapman*, 452 U.S. 337, 345-350 (1981).  However, a constitutional violation is present when the conditions of the institution "deprive inmates of the minimal civilized measure of life's necessities" or when they involve "unnecessary and wanton infliction of pain."  *Id.* at

346-47.   Moreover, overcrowding can qualify as a constitutional violation when the effects of it, combined with other factors, "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).   The Seventh Circuit has found that overcrowding that leads to "unwholesome food, medical neglect and continuous threats to prisoners' safety" can "constitute cruel and unusual punishment." *French v. Owens*, 777 F.2d 1250, 1252 (7th Cir. 1985); *see also Jensen v. Clarke*, 94 F.3d 1191, 1195 (8th Cir. 1996) (finding overcrowding created a substantial risk of harm to inmates when the jail assigned them to cells randomly despite the threat posed by violent prisoners to their cellmates); *Strickler v. Waters*, 989 F.2d 1375, 1382 (4th Cir. 1993) (finding although overcrowding per se is not unconstitutional, it violates the Constitution if it results in the prisoners being denied identifiable human needs).

This   Court   disagrees   with   Defendants'   argument   that Plaintiff's grievances simply allege overcrowding in itself.   Tyson specifically complains in his grievances that the overcrowding is "causing tension between the inmates," "stress," and "affecting our food rations." (Compl. pp. 8-9.)   This case is like *Jensen v. County of Lake*, in which this Court found that similar inmate allegations of overcrowding exhausted the PLRA.   958 F. Supp. 397 (N.D. Ind. 1997).   In *Jensen*, this Court stated that:

7

> Plaintiffs in this case do not complain simply of overcrowding. According to Plaintiffs, the conditions are such that fights and injuries to inmates are common and that it is very difficult for the jail personnel to ensure the safety of the inmates housed at the jail. In other words, that Defendants are subjecting the Plaintiffs to dangerous conditions.

*Id.* at 406. Similarly, in this case, the Court finds that the allegations of tension, stress, and inadequate food surpass complaints of mere overcrowding.

The Supreme Court has recently emphasized that the PLRA does not require a hyper technical grievance. *See Jones v. Bock*, 127 S. Ct. 910 (Jan. 22, 2007) (ruling that the PLRA does not impose a "name all defendants" exhaustion requirement). Rather, the *Jones* Court reasoned that:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 127 S. Ct. at 922-23. In this case, Defendants have put forth no argument that Plaintiff failed to comply with the Grant County Jail grievance procedure, nor is any such evidence before the Court.

Drawing on principles of notice pleading, the Court of Appeals for the Seventh Circuit has held that, absent more stringent administrative requirements, an inmate need not "lay out the facts,

articulate legal theories, or demand particular relief," so long as the grievance objects "intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).   As demonstrated in *Riccardo v. Rausch*, 375 F.3d 521 (7th Cir. 2004), this is not a rigorous standard.   In *Riccardo*, the Court found the grievance adequately supported a prisoner's section 1983 claim against a guard when he stated that "the administration don't [sic.] do there [sic.] job.   [A sexual assault] should've never [sic.] happen again." *Id.* at 524.   Although the Court acknowledged this language was ambiguous, it nevertheless judged it sufficiently specific because "[a] generous construction of this grievance would have induced the prison to consider the possibility that the guards could have prevented this assault." *Id.*   Exhaustion is satisfied if the grievance "served its function of alerting the state and inviting corrective action." *Id.*

Here, Plaintiff's grievances objected to overcrowding which resulted in dangerous inmate conditions.   Contrary to Defendants' bald claim that "[i]n a very real sense, the grievances are going to be presented for the first time in federal district court litigation," (Defs.' Mem. In Opp. To Pl.'s Mot. To Certify Class, p. 5), this Court believes that the Grant County Jail was put on proper notice of Plaintiff's grievance that the jail was overcrowded which was resulting in tension and dangerous conditions for the inmates.   Plaintiff's grievances objected intelligibly to

the asserted shortcoming of overcrowding and the resulting problems of tension and stress between the inmates. The Court believes this is enough to satisfy the PLRA exhaustion requirement.

### Typicality

Rule 23(a)(3) demands that the claims of Plaintiff be typical of the class claims. A plaintiff's claim is typical of a proposed class if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Defendants do not contest that the proposed class has been subjected to the same practice as Plaintiff - overcrowding of the Grant County Jail. Therefore, the Court finds the requirement of typicality is met.

### Adequacy of Representation

Rule 23(a)(4) requires that the Plaintiff will fairly and adequately protect the interests of the class. This determination has two facets. First, Plaintiff must not have interests antagonistic to the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Second, Plaintiff's counsel must be qualified, experienced, and able to effectively conduct the litigation. *Rogers v. Baxter Int'l, Inc.*, No. 04 C 6476, 2006 WL 794734, at *5 (N.D. Ill. March 22, 2006) (citing *Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)).  Defendants do not contest that Plaintiff and the class are represented by experienced counsel, nor do they dispute that Plaintiff will vigorously pursue the class' interests as well as his own.

### Rule 23(b)(2)

To satisfy the requirement of Rule 23(b)(2), the party who opposes the class must have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  As stated in a leading treatise:

> Rule 23(b)(2) was drafted specifically to facilitate relief in civil rights suits.  Most class actions in the constitutional and civil rights areas seek primarily declaratory and injunctive relief on behalf of the class and therefore readily satisfy Rule 23(b)(2) class action criteria.

A. Conte & H. Newberg, 8 Newberg on Class Actions, § 25.20 (4th ed. 2002).  In this case, Defendants have acted or refused to act on grounds generally applicable to the class; therefore, the requirements of Rule 23(b)(2) are met.

In sum, Plaintiff has satisfied the requisite standards for class certification. Accordingly, a class consisting of "any and all persons currently confined, or who will in the future be confined, in the Grant County Jail," is certified as to the Constitutional claims.  As discussed further below, though,

Plaintiff's state law claims are dismissed.

Motion to Dismiss

Defendants argue that Plaintiff's state law claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 12(c).  For the purpose of analyzing Defendants' Rule 12(b)(1) claim, the following standards apply.  Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims over which the federal court lacks subject matter jurisdiction.  Jurisdiction is the "power to decide" and must be conferred upon a federal court.  *In re Chicago, Rock Island & Pac. R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).  When jurisdictional allegations are questioned, the plaintiff has the burden of proving that the jurisdiction requirements have been met.  *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).  In reviewing a Rule 12(b)(1) motion to dismiss, the Court may look beyond the complaint and review any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists.  *United Transp. Union v. Gateway Western R.R. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

To the extent Defendants' claims are under Rule 12(b)(6), the Court will apply the following guidelines.  The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not to decide the merits.  *Triad Assocs., Inc. v. Chicago Hous. Auth.*,

12

892 F.2d 583, 586 (7th Cir. 1989).  In determining the propriety of dismissal under Federal Rule of Civil Procedure 12(b)(6), the court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001).  A court may dismiss a complaint only if it appears beyond doubt the plaintiff can prove no set of facts that would entitle her to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Further, a court must "construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985).  A complaint need not plead law or be tied to one legal theory. *LaPorte County Republican Cent. Comm. v. Board of Comm'rs of the County of LaPorte*, 43 F.3d 1126, 1129 (7th Cir. 1994) (citing *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992)).  A complaint may not be dismissed just because it omits factual allegations, but it may be dismissed when the plaintiff makes clear that she does not plan to prove an essential element of her case.  *Id.*

     To the extent Defendants' claims are under Rule 12(c), a motion for judgment on the pleadings under Rule 12(c) "is reviewed under the same standard as a motion to dismiss under 12(b): the motion is not granted unless it appears beyond doubt that the plaintiff can prove no facts sufficient to support his claim for

relief, and the facts in the complaint are viewed in the light most favorable to the non-moving party." *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997); *see also Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989).  In ruling on a motion for judgment on the pleadings, the Court must "accept as true all well-pleaded allegations" and view them in the light most favorable to the non-moving party, as well as accept as true all reasonable inferences to be drawn from the allegations. *Forseth v. Village of Sussex*, 199 F.3d 363, 364 (7th Cir. 2000); *see also Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).  A court may rule on a judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits.  *Id.* at 452-53.

The complaint alleges that this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. section 1367.  These state claims encompass the following allegations in the complaint:

- Defendant Sheriff did not "take care of the county jail and the prisoners there" as required by Ind. Code § 36-2-13-5(a)(7).  (Compl. ¶¶ 14, 42, 47.)

- Defendant County Commissioners did not "establish and maintain a . . . county jail" in compliance with Ind. Code § 36-2-2-24.  (Compl. ¶¶ 15, 41, 46.)

- The overcrowding and other conditions at the Grant County Jail violate the Indiana County Jail Standards ("Indiana Jail Standards") because:

    A. There is not one bed for each prisoner as required by 210 Ind.

Admin. Code  3-1-7(g).

B.  The jail is not maintained in a safe and sanitary condition as required by 210 Ind. Admin. Code 3-1-9.

C.  Inmates are denied the reasonable opportunity for physical exercise and recreation as required by 210 Ind. Admin. Code 3-1-15(e).

(Compl. ¶ 48.)

Defendants attack these aforementioned claims under Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 12(c).  This Court begins its analysis under Rule 12(b)(1), following the similar line of prison discipline cases, *Riner v. Raines*, 409 N.E.2d 575 (1980), *Hasty v. Broglin*, 531 N.E.2d 200 (Ind. 1988), and *Zimmerman v. State*, 750 N.E.2d 337 (Ind. 2001), which have been found by the Supreme Court of Indiana to:

> make clear, however, the threshold inquiry in these prison discipline cases is whether the trial court has jurisdiction over the subject matter.  If subject matter jurisdiction is lacking, a complaint is subject to dismissal under Trial Rule 12(B)(1).

*Blanck v. Ind. Dep't Of Corr.*, 829 N.E.2d 505, 508 (Ind. 2005).

Defendants argue that there is no private cause of action for violation of these Indiana statutes and Indiana Jail Standards, and that the Indiana legislature did not intend for prisoners to be able to seek injunctive or declaratory relief for violation of the same.  In response, Plaintiff argues that the Court has supplemental jurisdiction over the state law claims under 28 U.S.C. section 1367.  The parties do not dispute that the traditional test

15

used in Indiana to determine if a statute can be enforced by a litigant is clear: "[a] private cause of action generally will be inferred where a statute imposes a duty for a particular individual's benefit but will not be where the Legislature imposes a duty for the public's benefit." *Blanck*, 829 N.E.2d at 509. However, even if a statute creates a duty towards an individual, the Supreme Court of Indiana has found that a private right of action may nevertheless be unavailable if the Legislature did not intend a private cause of action to be created. *Id.* at 510 (affirming dismissal of complaint brought against the Department of Corrections alleging arbitrary prison disciplinary procedures in violation of Indiana statutes, stating that "the question here is ultimately one of legislative intent.").

Plaintiffs contend that the Indiana courts have recognized that Indiana Code section 36-2-13-5(a)(7) establishes an enforceable obligation or duty on the Sheriff, and therefore provides a cause of action on behalf of prisoners and against the Sheriff. In support of this theory, Plaintiff relies mainly upon *Johnson v. Bender*, 369 N.E.2d 936, 939 (Ind. Ct. App. 1977), *Trout v. Buie*, 653 N.E.2d 1002, 1008 (Ind. Ct. App. 1995), and *Roberts v. State*, 307 N.E.2d 501, 505 (Ind. Ct. App. 1974). *Johnson* involved a wrongful death action against the sheriff when an inmate died, alleging that the inmate's death was proximately caused by the sheriff's negligence in failing to provide proper medical care.

16

*Johnson*, 369 N.E.2d at 937-39.   The Court reasoned that under Indiana Code 11-5-1-3, the sheriff "who is charged with the care and custody of a prisoner, has a duty to take reasonable precautions under the circumstances to preserve the life, health and safety of the prisoner."   *Id.* at 6939.   In *Trout*, an inmate brought a section 1983 action against the sheriff in connection with an attack upon him by another prisoner and subsequent medical care provided to him.   *Trout*, 653 N.E.2d at 1004-05.   In addressing the claim for negligence, the Court found the sheriff had a statutory duty to take care of the jail and the prisoners under Indiana Code § 36-2-13-5(a)(7), and a duty to exercise reasonable care to preserve the prisoner's health and safety.   *Id.* at 1008. *Roberts* was an action for injuries sustained by an inmate when prison guards fired into a group of protestors.   In that case, the Court noted that:

> there exists adequate authority in this state to
> support the proposition that a public official,
> charged with the custody and care of a prisoner,
> owes a private duty to the prisoner to take
> reasonable precautions under the circumstances to
> preserve his life, health, and safety – a duty
> which is in addition to the duty of safekeeping
> owed to the public generally.

*Roberts*, 307 N.E.2d at 505.[1]

In sharp contrast to this case which only seeks the remedy of

---

[1]Although the term "private duty" is used in *Roberts*, it is not in the context of analyzing whether the plaintiff had a private right of action under the applicable state regulation, but rather in the context of sovereign immunity.

injunctive and declaratory relief, all three of the aforementioned
cases (*Johnson*, *Trout*, and *Roberts*), involve plaintiffs suing for
damages under a negligence theory, and the Indiana statutes were
considered in determining whether the sheriff owed the inmates a
duty of care under the negligence standard.   None of the cases
cited by Plaintiff involve the recovery of injunctive or
declaratory relief based upon the alleged violation of the Indiana
Jail Standards or state statutes.   Indeed, this Court was not able
to locate any such case.

Plaintiff also argues that Indiana Code section 36-2-2-24
creates rights Plaintiff can enforce against the Grant County
Commissioners.   In support of this argument, Plaintiff cites
*Weatherholt v. Spencer County*, 639 N.E.2d 354 (Ind. Ct. App. 1994),
in which a prisoner with a back condition claimed the county was
liable after he was denied a lower bunk and injured himself while
climbing to an upper bunk:

> We hold that when an inmate in a county jail is
> injured as a result of the manner in which the jail
> is administered and not by any defect in the jail
> facility, the county does not owe him a duty of
> care.   Indiana Code § 36-2-2-24 does not impose a
> duty upon a county to administer its jail.   A
> county's duty to maintain its jail is a duty to
> keep the jail open for use and in good repair.   An
> inmate's request for particular accommodations is
> not within the statutory authority nor the
> responsibility of a county.   Rather, it is the
> sheriff who is charged with a statutory duty to
> administer the jail in a manner which preserves the
> safety of inmates.   Once the county establishes and
> then reasonably maintains the jail, it is not
> responsible for administering the manner of an

inmate's incarceration.

*Id.* at 356 (internal citation omitted). *Weatherholt* seems to state that the county's main duty is to maintain a jail, keep it open, and in good repair. Here, Plaintiff alleges that the Grant County Jail is overcrowded - but does not allege that it is closed, or in disrepair. Moreover, *Weatherholt* certainly does not hold that an injunction is appropriate relief for violation of Indiana Code section 36-2-2-24.

The cases cited by Defendants are much more apposite. *Malone v. Becher*, No. NA 01-101-C H/H, 2003 WL 22080737 (S.D. Ind. Aug. 29, 2003), is extremely similar to this case because the plaintiffs sued the county officials for damages, alleging that severe under-staffing and inmate overcrowding created jail conditions that violated their constitutional rights and the plaintiffs alleged several state tort claims as well. The plaintiffs in *Malone* argued that violations of the Indiana Jail Standards, set forth in 210 Indiana Administrative Code section 3-1-1, entitled them to damages. *Id.* at *19. In turn, the defendants contended that there was no implied private cause of action under the Indiana Jail Standards. The Court reasoned as follows:

> [A]s a general rule, a state's administrative regulations do not provide the source of an implied cause of action for damages against a local government. Rather, would-be plaintiffs must look to the statute to determine whether an express or implied cause of action is permitted. The Indiana courts have stated that "when legislation expressly provides a particular remedy or remedies, courts

19

> should not expand the coverage of the statute to
> subsume other remedies.  'When a statute limits a
> thing to be done in a particular mode, it includes
> the negative of any other mode.'"

*Id.* at *20 (citing *Coons v. Kaiser*, 567 N.E.2d 851, 852 (Ind. Ct. App. 1991).  The *Malone* Court went on to note that the Indiana legislature did provide a specific remedy for failures to comply with the jail standards (under Indiana Code section 11-12-4-2, if the Commissioner of the Department of Corrections provides notice that a county jail does not comply with the Indiana Jail Standards, the sheriff may file suit in a circuit court against the "board of county commissioners or county counsel for appropriate mandatory or injunctive relief.").  *Id.* at *20.  Thus, it concluded that "[n]othing in the statute suggests that the legislature intended to give inmates or anyone else a private cause of action for damages, and the court sees no basis for implying one."  *Id.*  This Court agrees with the analysis in *Malone*.

Plaintiff argues that *Malone* errs in its conclusion that the Indiana Jail Standards impose only a general public benefit and not a duty for the particular benefit of prisoners, but Plaintiff provides the Court with no persuasive authority holding that declaratory relief may be sought by prisoners for violation of the Jail Standards.  Further, the Court disagrees with Plaintiff's contention that the statutory structure gives no remedy to the prisoners aggrieved by violation of the jail standards.  Indiana Code section 11-12-4-1 specifically directs the Indiana Department

20

of Corrections ("IDOC") to "adopt under IC 4-22-2 minimum standards for county jails" governing general physical and environmental conditions, services and programs to be offered, and procedures for the care and control of confined persons.  Ind. Code § 11-12-4-1. Pursuant to this statutory directive, the IDOC promulgated the Indiana Jail Standards as administrative regulations. *See* 210 Ind. Admin. Code § 3-1-1 *et seq*.  Then, Section 11-12-4-2 sets forth the specific relief that the department shall inspect each county jail at least once a year to determine whether it is complying with the standards adopted under section 1 of the chapter (the Indiana Jail Standards).  Thus, the Indiana legislature has provided a specific remedy for failure to comply with the Indiana Jail Standards at issue in this case (210 Ind. Admin. Code 3-1-7(g), 3-1-9, and 3-1-15(e)), and this Court sees no basis to imply a private cause of action.

The reasoning espoused in *Malone* is consistent with the well developed law in Indiana regarding prison discipline cases.  In *Blanck v. Indiana Department of Corrections*, the Supreme Court of Indiana dismissed a complaint for lack of subject matter jurisdiction, finding an inmate had no private right of action to challenge prison discipline imposed on him by the Department of Corrections pursuant to prison discipline statutes.  *Blanck*, 829

N.E.2d at 509-511.[2]   The *Blanck* Court found that:

> While each of these statutes imposes certain
> duties on the DOC and, we assume, confers
> substantive rights on inmates, none of them
> contains any provision suggesting that inmates
> have a right to enforce any such rights in
> court.

*Blanck*, 829 N.E.2d at 509.   Finding the legislative intent clear because the Indiana Administrative Orders and Procedures Act ("AOPA") established the exclusive means for judicial review of an agency disciplinary action, the Court held that the clear intent of the Legislature was to deny inmates charged with or found guilty of misconduct judicial review, and it was "not free to infer a private right of action."   *Id.* at 510.   Plaintiff tries to distinguish *Blanck* by pointing to the AOPA statutory exemption establishing the exclusive means for judicial review of an agency action.   While it is true that no such explicit exemption exists in this case, this Court believes that the Legislative intent is still clear.

As in *Blanck*, the statutory provisions at issue in this case do not explicitly provide a right of judicial review.   Further, the

---

[2]At issue in *Blanck* were five provisions of the Indiana Code: Section 11-10-1-7 (requiring periodic review of the reasons for segregation); Section 11-11-5-4 (prohibiting the DOC from using various forms of discipline); Section 11-11-5-5 (prohibiting the DOC from imposing any discipline before affording the person charged with misconduct a hearing); Section 11-11-5-6 (requiring periodic review of the reasons for segregation of an offender charged with misconduct); and Section 11-11-5-7 (requiring periodic review of the reasons for segregation of an offender found guilty of misconduct).   *Blanck*, 829 N.E.2d at 508-09.

Court finds the legislative intent clear.  Because the Legislature has already provided a specific remedy for failure to comply with the Jail Standards under Indiana Code section 11-12-4-2, the Legislature did not intend for inmates to have access to judicial review.  As acknowledged by *Blanck*, we are not free to infer a private right of action.  *Blanck*, 829 N.E.2d at 510.

The analysis and holding in *Blanck* was also applied in *Kimrey v. Donahue*, 861 N.E.2d 379 (Ind. Ct. App. 2007), granting a motion to dismiss inmates' claims against the Indiana Department of Correction ("IDOC").  In *Kimrey*, the inmates alleged that an IDOC administrative procedure disallowing "all printed matter containing any type of sexual conduct" violated their statutory right to printed matter as set forth in Indiana Code section 11-11-3-6.  *Id.* at 380 n.1.  The appellate court upheld the district court's dismissal of plaintiffs' complaint for lack of subject matter jurisdiction.  In so doing, it noted that:

> While an argument could be made that the *Blanck* decision is limited to prison discipline matters, we think that the *Blanck* Court's analysis has broader application to review of complaints brought by inmates of the Department of Correction seeking to enforce asserted statutory "rights," such as in the case before us.  We garner from the *Blanck* decision that trial courts lack subject matter jurisdiction over such complaints unless an explicit private right of action is afforded by statute or an allegation is made that constitutional rights are being violated.

*Id.* at 382.[3]   As in *Blanck*, the *Kimrey* Court found there was nothing in the Indiana statute that suggested the inmates had a right to enforce the rights in court.   Further, the Court noted "the long-standing principle that the judiciary is constrained from interfering with the internal procedures and policies of the Department of Correction." *Id.* at 383.  Having determined that the Legislature did not intend to provide claimants with a private right of action to enforce Indiana Code section 11-11-3-6, the Court affirmed the dismissal of the complaint for lack of subject matter jurisdiction.   *Id.*

Turning to the case at hand, there is nothing in the Indiana statutes (Ind. Code §§ 36-2-13-5(a)(7), 36-2-2-24), or Indiana Jail Standards (210 Ind. Admin. Code 3-1-7(g), 3-1-9, 3-1-15(e)), allegedly violated by Defendants that imply a private right of action.   Moreover, this Court finds that the Legislature did not intend for inmates to be able to bring such claims in court, for the Legislature has provided a specific remedy for failure to comply with the jail standards.   Pursuant to Indiana Code section 11-12-4-2, the Commissioner of the Department of Correction must provide notice that a county jail does not comply with the

---

[3] In this case, Plaintiff does not contend that the alleged violations of the state law give rise to an action under 42 U.S.C. section 1983 or equate to a federal constitutional violation.  (See Pl.'s Mem. In Opp. To Defs.' Mot. To Dismiss, p. 3.)  Rather, Plaintiff argues that this Court has jurisdiction over the state law claims under the supplemental jurisdiction of 28 U.S.C. section 1367.

standards, and then the sheriff may file suit in the local circuit court against the commissioners for appropriate mandatory or injunctive relief. *Id.* This occurs six months after first written notice of a rule violation from the DOC, and only after a second DOC finding that the county is not making a good faith compliance effort. Ind. Code § 11-12-4-2(b). At that time, if the sheriff does not file suit, the Department of Correction may either move for an injunction itself, or recommend that the local prosecutor convene a grand jury. Ind. Code § 11-12-4-2(c).

Returning to the threshold inquiry of whether this Court has jurisdiction over the subject matter, this Court finds that subject matter jurisdiction is lacking over claims seeking an injunction or declaratory relief for violation of the Indiana Jail Standards and the alleged duties under the Indiana Code. Therefore, dismissal of the state claims is appropriate under Federal Rule of Civil Procedure 12(b)(1). Alternatively, because Plaintiff's state claims that are allegedly pendent to the federal claims are foreclosed as a matter of state law, dismissal under Rule 12(b)(6) would also be appropriate.


CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Class Certification is **GRANTED**. Accordingly, a class consisting of "any and all persons currently confined, or who will in the future be

confined, in the Grant County Jail," is **CERTIFIED**.   The Motion to Dismiss is **GRANTED**.   The Clerk is **ORDERED** to **DISMISS** Plaintiff's state law claims **WITH PREJUDICE**.   Plaintiff's Constitutional claims **REMAIN PENDING**.


**DATED: May 9, 2007**              **/s/ RUDY LOZANO, Judge**
                                   **United States District Court**